## In re Condemnation of Right-of-Way

*Ronald Chesin,* Assistant Attorney General, for Commonwealth.

*John Hrubovcak,* for Department of Transportation.

*Lawrence Sager,* for condemnees.

SUGERMAN, *J.,* January 13, 1975—The Commonwealth of Pennsylvania, Department of Transportation ("PennDOT") condemned a portion of property owned by Stephen and Elizabeth Becker ("condemnees"), and filed a declaration of taking relating thereto in conformity with the provisions of article IV, sec. 402, of the Eminent Domain Code of June 22, 1964, P.L. 84, as amended, 26 P.S. §1-402. Pursuant to article IV, sec. 406 of the Eminent Domain Code, the condemnees filed preliminary objections to the declaration of taking, and thereafter depositions were taken of one of the condemnees, an engineer employed by PennDOT, and a consulting engineer employed by PennDOT.

The condemnees' property was taken by PennDOT as a part of a highway project directed at widening existing Legislative Route 201 from its present two lanes to four lanes, a distance of approximately 4.3 miles from the Borough of Phoenixville to Bridge Street in East Vincent Township.

The project was proposed by PennDOT in 1965 to alleviate safety hazards existing on the two-lane

highway and particularly, poor sight distances and passing and turning hazards resulting in numerous collisions causing injury and death.* The project is to be funded entirely by the Commonwealth of Pennsylvania without resort to Federal moneys.

During the design phase of the project, PennDOT and its predecessor, the Pennsylvania Department of Highways, in accordance with the mandate of the Act of May 6, 1970, P.L. 356 (No. 120), sec. 13, as amended, 71 P.S. §512, consulted with, and sought, received, reviewed and considered comments thereon from the Delaware Valley Regional Planning Commission and a variety of State agencies, including the State Planning Board, the Department of Forests and Waters (since merged into the Department of Environmental Resources), the Department of Community Affairs, the Department of Health (also merged into the Department of Environmental Resources), the Fish Commission, the Department of Mines and Mineral Industries, the Historical Museum Commission, the Department of Agriculture, and the Chester County Soil and Water Conservation District. Such consultations were for the purpose of determining whether the project would adversely affect the environment of the area adjacent to the project.

Following consultation with and comment by the foregoing agencies, PennDOT in accordance with the same statute, caused to be published in newspapers of general circulation within the project area notices of the opportunity for public hear-

---

* Accidents reported to the Pennsylvania State Police for the years 1968, 1969 and 1971 resulted in 170 injuries and seven deaths.

ings on the project. No requests for public hearings were received by PennDOT, and, accordingly, no public hearings were held. Nevertheless, PennDOT considered the 23 social, environmental and economic factors required by the foregoing act to be considered at public hearings.

The project was ultimately granted design approval by the Bureau of Design of PennDOT, following appropriate public notice, and thereafter, the Secretary of Transportation made a finding that no adverse environmental impact was likely to result from the project as designed.

Thereafter, PennDOT commenced condemnation procedures in accordance with the Eminent Domain Code in order to acquire the lands necessary for the construction of the project. Such acquisition included the portion of the condemnees' lands here involved.

The condemnees' preliminary objections to the declaration of taking raise the following four issues:

(I) There is no necessity, in law or fact, for the proposed condemnation;

(II) The condemnation fails to strictly conform to section 8 of the Act of May 29, 1945, P.L. 1108, 36 P.S. §2391.8;

(III) The declaration of taking does not set forth with particularity the property proposed to be condemned; and

(IV) The condemnation is in violation of article I, section 27, of the Constitution of Pennsylvania inasmuch as the proposed project "creates more damage to the environment than any benefits to be derived therefrom."

## (I) AND (III)

The condemnees first assert that there is no necessity, in law or in fact, for the proposed condemnation. However, the condemnees neither briefed nor argued such assertion, and we must conclude that this objection is withdrawn.

The condemnees next assert that the declaration of taking does not set forth with particularity "the property so proposed to be condemned." Again, the condemnees did not brief or argue such assertion, and again, we must conclude that this objection is withdrawn. We note, however, that article IV, sec. 402(b)(5) of the Eminent Domain Code, supra, 26 P.S. §1-402(b)(5), requires only that the declaration of taking contain:

"(5) A description of the property condemned sufficient for the identification thereof, specifying the city, borough, township or town and the county or counties wherein the property taken is located, a reference to the place of recording in the Office of the Recorder of Deeds of Plans showing the property condemned or a statement that plans showing the property condemned are on the same day being lodged for record or filed in the Office of the Recorder of Deeds in such county in accordance with section 404 of this Act."

No additional "particularity" is required. The schedule of condemned property annexed to the declaration of taking at bar appears more than sufficient to enable the condemnees to identify the property condemned. Additionally, paragraph 3 of the declaration of taking sets forth the date and place of the recording of the plan and reference to such recorded plan and the said schedule of condemned property shows clearly the location and

extent of the condemnation as applied to these condemnees. Without a more specific objection by the condemnees, we are unable to determine the nature of the infirmity of which they complain.

(II)

The condemnees next assert that the condemnation fails to strictly conform to section 8 of the Act of May 29, 1945, P.L. 1108, as amended, 36 P.S. §2391.8. At argument, the condemnees narrowed such objection to the single assertion that although the Secretary of Highways is empowered to take property and pay damages for the purpose of constructing limited access highways under the Act of May 29, 1945, P.L. 1108, sec. 8, as amended, 36 P.S. §2391.8, such power is limited by and subject to the provisions of The Administrative Code of April 9, 1929, P.L. 177, art. XX, sec. 2002, as amended, 71 P.S. §512, and may be exercised only within the procedural framework provided by the cited section of The Administrative Code.

Building upon that argument, the condemnees next assert that section 2002 of The Administrative Code, supra, as amended, 71 P.S. § 512(b), requires the secretary to comply with *all* provisions of the Federal statutes and regulations relating to Federal-aid transportation programs, or, at the very least, those set forth in the National Environmental Protection Act, and in particular, the provisions of the latter act and the regulations of the Environmental Protection Agency created by that act, requiring the preparation of an environmental impact statement. The failure to prepare such environmental impact statement in connection with the instant project, the condemnees ar-

gue, is an impediment to the exercise by the Secretary of Highways of the power to condemn under the Act of 1945, 36 P.S. §2391.8, and is in violation of the cited section of The Administrative Code, thereby rendering the procedure followed by the secretary fatally defective. Accordingly, the condemnees assert, preliminary objections to the declaration of taking appropriately challenge the power or right of the condemnor to appropriate the condemned property within the purview of section 406(1) of the Eminent Domain Code, supra, 26 P.S. §1-406(a), and any other procedure followed by the condemnor, within the purview of section 406(3) of the Eminent Domain Code, 26 P.S. §1-406(a).

The Commonwealth argues that irrespective of the merits of the condemnees' argument, the issue may not be raised by preliminary objections to a declaration of taking but is cognizable in equity only. We disagree, in light of the clear language of Valley Forge Golf Club v. Upper Merion Twp., 422 Pa. 227, 221 A. 2d 292 (1966):

"Equity has been completely displaced as the forum for condemnation matters by the procedures established by the Eminent Domain Code . . ." Id. at 228, 221 A. 2d at 293.

"We are satisfied that the Eminent Domain Code fully protects the rights of the property owner and guarantees to him the constitutional safeguards to which he is entitled, including appropriate appellate review. Since the legislature has provided under the Code the exclusive proceedings in eminent domain cases, no remedy in equity is available to an injured property owner." Id. at 230, 221 A. 2d at 293, 294.

We conclude that all issues raised here by the

condemnees are properly raised by preliminary objections attacking the declaration of taking, filed under Article IV, sec. 406, of the Eminent Domain Code.

However, the condemnees' argument with respect to the failure on the part of the secretary to cause an environmental impact statement to be prepared, overlooks the plain fact that the legislature in Pennsylvania provided, in language the essence of clarity, that PennDOT follow only the *hearing procedures* required by the specified Federal statutes.

Section 2002 of The Administrative Code, supra, as amended, 71 P.S. §512(b), provides the following:

"(b) Upon the submission of the preliminary plan or design to the Department of Transportation for any transportation route or program requiring the acquisition of new or additional right-of-way, the Department of Transportation except in cases involving complaint proceedings under the jurisdiction of the Public Utility Commission shall have the power and *its duty shall be to follow the hearing procedures now or hereafter required by the Federal Government* for Federal-aid transportation programs pursuant to Titles 23 and 49 of the United States Code as amended and the regulations and procedures thereunder even though the transportation route or program does not contemplate the use of or actually employ Federal funds. . . ." (Emphasis supplied.)

That PennDOT must look to Federal authority for procedural purposes only becomes readily apparent upon reading the concluding language of section 2002 of The Administrative Code, supra, as amended, 71 P.S. §512(b), immediately follow-

ing the subsection quoted above. Such language sets forth the substantive aspects of public hearings with an abundance of specificity. If the legislature intended PennDOT to refer to Federal legislation for substantive as well as procedural guidance, the detailed language of section 2002 would become meaningless surplusage. The court cannot abide such convoluted statutory construction in order to reach a result which wholly ignores the other provisions of The Administrative Code.

The Statutory Construction Act of Dec. 6, 1972, P.L. 966 (No. 290), sec. 3, 1 Pa.C.S. §1921(a), provides pertinently that:

"(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."

Section 3 of the Statutory Construction Act of 1972, supra, 1 Pa.C.S. §1922(2), provides that in ascertaining the intention of the General Assembly in the enactment of a statute, the following presumption, among others, may be used:

"(2) That the General Assembly intends the entire statute to be effective and certain."

The suggestion that section 2002 of The Administrative Code, although clearly requiring resort to Federal authority for hearing procedures only, should also be construed as incorporating into Pennsylvania law the substantive provisions of Federal legislation, so obviously contradicts the obvious intendment of the cited provisions of the Statutory Construction Act, and simple logic, as to call into serious question the viability of all of our legislation. Such result will not be countenanced.

Moreover, the precise point has already been re-

solved against the condemnees by the Commonwealth Court in Payne v. Kassab, 11 Pa. Commonwealth Ct. 14, 312 A. 2d 86 (1973), where the court stated succinctly:

"We note that the Commonwealth did follow, as required by Act 120, the hearing procedures required by the Federal Government for Federal-aid transportation programs. However, there is no requirement that the Commonwealth do more than adhere to the Federal procedural requirements applicable to the conduct of hearings." 312 A. 2d at 95.

We conclude, therefore, that PennDOT need only look to and follow Federal authority in connection with procedural requirements applicable to the conduct of hearings. We observe that it did so, and the condemnees' objection to PennDOT"s failure to follow the substantive and other requirements of Federal authority is not well taken and cannot prevail.

### (IV)

Lastly, the condemnees object to the declaration of taking on the basis that the condemnation violates article I, sec. 27, of the Constitution of Pennsylvania by reason of the adverse and harmful environmental impact to be caused by construction of the project.

It is at once apparent to the court, as it must have been to the condemnees, that there is no evidence on this record of any such adverse or harmful environmental impact. Apparently recognizing the absence of such evidence, the condemnees at argument urged that without reference to The Administrative Code, article I, sec. 27, of the Constitution of Pennsylvania requires PennDOT to prepare an environmental impact statement. That section provides:

"The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and aesthetic values of their environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustees of these resources, the Commonwealth shall conserve and maintain them for the benefit of all of the people."

The condemnees also urge, as they must, that the cited section is self-executing, and that its provisions may be invoked by the condemnees in the case at bar.

Without reaching the questions of whether the constitutional provision is self-executing or may be invoked by the condemnees, we simply cannot find that the failure to prepare an environmental impact statement is contrary to or violative of article I, sec. 27, of the Constitution no matter how we might distort the language of the section. The condemnees have cited no authority, and our research reveals none, imposing such duty upon PennDOT by reason of the adoption of article I, sec. 27. The court is not willing to judicially append such requirement to the existing legislation.

The condemnees were afforded several opportunities in the early stages of the instant proceeding to present evidence and argument relating to environmental impact, and to challenge and refute contrary evidence and argument. They failed, however, to request a hearing before representatives of PennDOT, although on notice that such hearing would be held if requested. They failed to present such evidence or argument at depositions taken subsequent to the filing of their preliminary objections. It is significant that throughout the course of these proceedings, the condemnees have failed to point to a single aspect or element of the

project that in any manner might adversely affect the environment, and have failed to support with even a scintilla of evidence or argument, the conclusions set forth in paragraph 3 of their preliminary objection concerning adverse environmental impact.

The condemnees point to Payne v. Kassab, supra, as authority for their position and tell us, at page 3 of their supplemental brief:

"There, [in Payne v. Kassab] the highway project was not allowed to go forward because the Department of Transportation of the Commonwealth did not comply with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources."

This is an astonishing statement in light of the actual holding of the case *permitting* the project to proceed, and in light of the following conclusions of law made by the Commonwealth Court:

"4. The Defendant, the Commonwealth of Pennsylvania Department of Transportation, has complied with all relevant provisions of the Act of May 6, 1970, P.L. 356, §13, as amended, 71 P.S. §512, in respect to the River Street Project in Wilkes-Barre, Pennsylvania."

"5. The Defendants, Pennsylvania Department of Transportation and City of Wilkes-Barre, are not precluded from utilizing or taking any portion of the River Common for the purpose of highway or road construction or widening by Article I, Section 27 of the Pennsylvania Constitution."

In Payne v. Kassab, suit was commenced (and ultimately dismissed) by complaint in equity brought by abutting property owners, among others. Allegations directed specifically to adverse environmental impact were set forth in plaintiffs' complaint, and the court was able to determine, on

the basis of such allegations and the record before it, that any environmental harm caused by the project was outweighed by the public benefit to be derived from the project. In the case at bar, we are unable to make even that basic determination, inasmuch as the harm, if any, to be visited upon the environment, is nowhere set forth.

In summary, then, we find that (1) PennDOT has complied with all relevant procedures required by the applicable legislation; (2) the declaration of taking conforms to the requirements imposed by the Eminent Domain Code; (3) the condemnation of the condemnees' property was and is a valid and proper exercise of the power to so condemn as bestowed upon the Secretary of Transportation; and (4) neither the project itself, nor the condemnation of the condemnees' property are violative of article I, section 27, of the Pennsylvania Constitution.

Accordingly, we must and do make the following

## ORDER

And now, January 13, 1975, the condemnees' preliminary objections to the declaration of taking are hereby dismissed.